**TROTT et al. v. CULLEN et al.***

**No. 1329.**

Circuit Court of Appeals, Tenth Circuit.

Jan. 2, 1937.

PHILLIPS, Circuit Judge, dissenting.

For original opinion, see 86 F.(2d) 141, affirming decree in 8 F.Supp. 754.

Carlton Hill and George I. Haight, both of Chicago, Ill., and Forrest C. Northcutt, of Denver, Colo., for appellants.

Merrell E. Clark, of New York City, Morrison Shafroth and W. W. Grant, Jr., both of Denver, Colo., J. King Harness, of Detroit, Mich., and Grant, Ellis, Shafroth & Toll, of Denver, Colo., for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

The claims in suit—and with those only are we concerned—cover methods of supporting the engine unit in motor vehicles which utilize a pivotal mounting at one end and a resilient mounting at the other, with the necessary supporting fins. The majority of the court were and are of the view that, in the light of the prior art a

*Writ of certiorari denied 57 S. Ct. 511, 81 L. Ed. —.

part of which we sketched, no inventive genius was disclosed by the conception.

In support of the petition for rehearing, counsel tender additional exhibits which they say fairly exemplify their evidence and their argument, and offer again to conduct experiments conducted at the trial and before this court on the oral argument. Passing the point of propriety of considering new exhibits, or a new demonstration of old ones without a rehearing, the offer indicates a misconception of our views.

We did say that the Chrysler mounting, with the axis of rock passing through the center of mass, substantially did away with the so-called orbital movement or wabble of the motor. But we further said that the center-of-mass construction did not entirely eliminate vibration. Chrysler used rubber mountings because that was so, as our opinion noted. The evidence produced at the trial, with demonstrations under oath and subject to cross-examination, sustain our statement and the trial court's finding. Without pretense to mechanical knowledge, it would seem that it must be true that a mass will rock more evenly about an axis through the center of weight than through one that is off center. Counsel's tender of new evidence on appeal, not sworn to nor subjected to cross-examination, does not persuade us that this principle of physics does not apply here.

Counsel now emphasize the use of rubber in the front mounting, and assert that Chrysler's mounting, without the rubber, is not commercially practical. Even so, does it follow that Trott is entitled to a patent on the use of rubber to cushion shock? Using rubber for this purpose has been known as long as rubber itself. The same is true of the use of springs. Trott's patent, in reviewing the problem before him states that "In the endeavor to eliminate this engine sensation and tremor, the practice in some cases is to mount the engine upon its support in rubber mountings of various designs."

Certainly in 1929 no one was entitled to a monopoly on the use of rubber or springs to cushion shock; nor was any one then entitled to a monopoly on a pivot bearing. The majority of the court believe no one is entitled to a monopoly on the combination of the two in a conventional manner.

If Trott had been the first to conceive that a motor could be mounted so that it was substantially free to rock on its bearings, the result might well be different. But as we read the prior art, two-point resilient mountings for motors, which necessarily permit such freedom, were not new. Royce in 1914 patented a two-point mounting "preferably located so as to pass through the center of gravity of the engine." The patent describes his invention as relating "particularly to that method in which the engine is free to rock about a longitudinal axis and in which said movement is controlled by springs." Royce, it is true, also used a friction disc to aid in absorbing vibration, but that does not militate against the disclosure of a two-point mounting with resilient means, on which Trott now claims a monopoly. The second claim allowed Royce reads:

"In a motor vehicle the combination of a power or transmission unit mounted in the frame thereof so that it can rock about a longitudinal axis passing through its center of gravity, of springs for controlling the movement of said unit about said axis, and of friction dampers operating between said unit and the frame."

Trott does not infringe Royce because he does not use one element of the combination, the friction disc. For that reason, Royce may not be a technical anticipation. But with the Royce disclosure before him, as well as the rest of the prior art, the majority adhere to the view that Trott did not employ inventive genius in designing his mounting.

Exception is taken to the statement in the opinion that Trott's early conception was to conduct vibration through the front spring "to the wheels." The trial judge, in his opinion, stated that by this conception torque reaction was conveyed "directly to the front axle and the tires."

If the exception is well taken, we cannot see its materiality, for the claims embodying that construction are not in this case, and the statement in the opinion was purely introductory. But we are not able to see the error. Under that conception, the front end of the motor rested on a transverse leaf spring which was fastened to the axle which carried the front wheels. Trott testified that in that mounting the front end "was mounted on the front axle" and "Q. So your engine was entirely free from the frame? A. Yes, and the engine was mounted on rubber on the sub-frame." In his patent he states that he provides "a spring connection between the engine and

front axle which * * * transmits the torque to the axle from the engine."

It is thus very clear that this front axle mounting carried the vibration to the front axle in an effort to keep it away from the frame. Our conclusion, and that of the trial court, that vibrations transmitted to the front axle—free from the frame—were carried to the wheels which were attached to the axle, seems mechanically to follow. The body rests upon springs which in turn rest upon the front axle. If torque is transmitted to the axle, as Trott in his patent says, it would go to the wheels and the body springs. If the engine is entirely free of the frame, as Trott testified, the vibrations not absorbed by the transverse spring did not, at least, go to the frame, which is after all the point to which the introductory sentence was addressed. There being no contention in this suit that Chrysler infringes his early conception, the point need not be further pursued.

If Trott was entitled to a monopoly upon the broad conception of mounting a motor on two bearings, one pivoted and one or both resilient, then appellee should pay a toll, for its motors are so mounted. But if the broad claims in suit are not patentable, then the decree below was right. If, to avoid that result, the claims in suit, despite their broad language, are narrowed to the specific disclosure, then there is no infringement. The majority adhere to the view that the claims should be construed as they are written, and that so construed, they lack invention.

The petition for rehearing will be denied.

PHILLIPS, Circuit Judge (dissenting).

It is my opinion that the petition for rehearing should be granted. It shows, I respectfully suggest, that the majority opinion[a] is predicated on factual premises, which materially affected the result, either not in accord with the record or shown to be unfounded by a demonstration at the hearings in this court and the trial court, of the physical exhibits in operation.

The majority opinion in effect states that the orbital movement, more accurately described as movements in varying directions all within a defined orbit, present during the operation of an internal combustion engine, mounted in accordance with the claims in suit of patents 1,843,907 and 1,890,871, results from the fact that the front and rear mountings are in line with an axis passing below the center of mass (concentric with the crankshaft); that this renders the engine top heavy and out of balance and makes necessary the resilient mountings; and that the alleged infringing devices avoid such orbital movement because the axis between the two mountings passes through the center of mass and suspends the engine unit in balance.

Such orbital motion is present in the alleged infringing devices where the engines are suspended in balance, and will transmit vibrations to the frame, body and propelling mechanism of the automobile when resilient mountings are not employed. This fact was established by the simple experiment of substituting a rigid front mounting for the resilient one in one of the alleged infringing devices and operating the motor. Plaintiff's evidence as to this experiment and what it showed was not disputed. This movement can also be observed with the eye and felt with the tip of one's finger when the alleged infringing device is in operation. It varies with the speed of the engine but its presence is beyond doubt. This conclusion is corroborated by the fact that in all the commercial devices manufactured and sold by Chrysler Corporation the pivotal supports, which carry the engine unit, are mounted in or on resilient rubber.

The operation of an internal combustion engine produces vibrations other than those caused by torque reaction. These other vibrations are due to lateral, vertical and diagonal resultant forces and they are present and must be cushioned regardless of whether the engine unit is or is not in balance on its pivotal mountings. Pivotally mounting the engine and letting it oscillate with substantial freedom will overcome the effect of torque reaction, but it is necessary to employ resilient mountings to overcome the effect of such other forces.

In patent '907 Trott seats the mountings in or on resilient rubber. In patent '871 Trott employs a transverse spring mounted on the front axle which provides, in effect, a resilient front mounting.

Trott combined front and rear pivotal mountings, carrying substantially all of the

---

[a] Where the words "majority opinion" are used herein the reference is to the first majority opinion.

weight of the engine unit and allowing substantial freedom of oscillation, with resilient seats at the pivot points, especially the front pivot point, and thereby solved the problem of eliminating the effect of all the vibratory forces and preventing their communication to the frame, body and propelling mechanism of the automobile.

The majority opinion states in effect that the axis passing from the front to the rear mountings of the devices constructed in accordance with the claims in suit of patents '907 and '871, must be below the center of mass. In other words, that Trott taught to mount the engine on pivot points or supports positioned below the center of mass so that it would be out of balance.

It is true that Trott emphasized placing the front and rear mountings as nearly as possible in line with the longitudinal axis of the crankshaft—and in that he no doubt was in error with respect to certain types of engines—but he did not teach mounting the engines out of balance. In fact he taught the opposite.

In his specification in '907, he said:

"These pivotal mountings may be concentric with the crankshaft 7 of the engine, or *vertically* or *laterally spaced therefrom within reasonable limits, and depending on conditions and requirements.*

"That is, if not concentric with the engine shaft, *these pivotal mountings may be located in the longitudinal central vertical plane of the power plant unit if the weight thereof will thus be balanced,* or laterally off center in either direction if the weight of the power plant unit is not equally distributed on either side of said plane." (Italics mine.)

It will be noted he said the mountings may be *vertically* or *laterally* spaced from the axis of the crankshaft "depending on conditions and requirements" "if the weight" of the power plant "will thus be balanced."

This shows Trott taught that departure may be made from the crankshaft axis, both vertically and laterally, but not so as to throw the engine out of balance.

It must also be kept in mind that Trott's mountings are for different types of engines including aeroplane engines and marine craft engines where a mounting in line with the crankshaft axis would be through the center of mass and would suspend the engine in balance.

Figure 1 of the patent drawing in patent '907 shows an automobile engine with the mountings above the axis of the crankshaft and figure 7 shows an aeroplane engine with the mountings concentric with the crankshaft.

Dec. 1, 1931.          1,834,907

R. S. TROTT
ENGINE MOUNTING
Filed May 27, 1929.

Trott did his experimenting with a Ford engine where the center of mass is only about 2 inches above the crankshaft axis. When applied to a Ford engine, the mountings illustrated in figure 1 would be approximately in line with an axis through the center of mass. In the Plymouth engine manufactured by Chrysler Corporation, the center of mass is several inches above the crankshaft axis, necessitating a much higher front mounting, but Trott taught that such departure could be made.

I conclude that in patent '907 Trott taught to suspend the engine approximately in balance but to position the mountings as nearly in line with the crankshaft axis as conditions permit.

In patent '871, the engine unit is mounted pivotally at the rear and at the front on a transverse spring carried on the front axle. Such spring permits a pivotal movement. While the spring itself is below center of mass it permits such freedom of movement by the engine unit, that the unit, in operation, finds its normal axis of oscil-

lation, an axis through the center of mass, and in fact oscillates about that axis. This also was demonstrated by the operation of the physical exhibits at the hearings in this court and the trial court. The axis of oscillation in line with the center of mass can be plainly discerned with the naked eye, by observing while the engine is running, the movement of a metal rod vertically mounted on the front of the motor. This device is operative and effectually solves the vibration problem. It is the device that was disclosed and demonstrated to Chrysler Corporation's representative. Lee substituted for the spring mounting a resilient rubber mounting pivotally supported, at the front end of the normal axis of oscillation.

Trott discovered and demonstrated the principle that an engine mounted so as to permit it to oscillate with substantial freedom about its normal axis of oscillation will overcome the effect of the vibrations produced by torque reaction. No doubt Lee's mounting is an improvement over the spring means employed by Trott but it employs Trott's principle and produces its appropriate result.

In pivotally mounting the engine unit, front and rear in patent '907 and pivotally at the rear and on the transverse spring in front in patent '871, so as to permit substantial freedom of movement about an axis of oscillation, Trott made a revolutionary departure from the teachings and practices of the prior art,—one so unorthodox that automotive engineers would not have accepted it as practical until Trott's discovery and demonstration. Indeed, until one sees the actual demonstration, it is difficult to believe that an internal combustion engine unit could be permitted such freedom of movement and still properly perform its appropriate function.

When Trott combined such pivotal mounting, substantial freedom of oscillation and front and rear mountings seated in resilient supports, carrying substantially all of the weight of the engine unit, he produced a new and useful combination not disclosed by the prior art and effectually solved the problem of eliminating the effect on the frame, body and propelling mechanism of the several vibrations produced by the several resultant forces generated in the operation of internal combustion engines.

As stated in my dissent to the majority opinion herein, Trott's approach to the problem was new. Prior efforts had been directed toward restraining the resultant forces, as for example in the Royce patent number 1,108,242, by frictional resistance and springs to prevent oscillatory movement. In others the restraint is sought to be accomplished by providing supports with vibration rates different from the vibration rate of the engine so that the engine vibrations do not synchronize with the natural frequency of the supports, (Lee patent number 1,743,612 and Akimoff French patent number 536,360); and by providing different vibration rates at the several supports, so that the vibration rates of the several supports do not synchronize with each other, (Lee patent number 1,743,512). On the contrary, Trott's conception is to give substantial freedom to the normal movements of the engine unit. He overcomes the vibratory effects by permitting substantially normal oscillatory movements in mountings resiliently seated, that carry substantially all of the weight of the engine unit.

In patent '871, the vibrations are not communicated to the tires as stated in the majority opinion. This was shown by a demonstration at the hearings, here and below, of an engine, mounted in accordance with patent '871, in an automobile supported on rigid blocks, where no vibration was communicated to the frame, body and propelling mechanism.

Lee adopted Trott's conception but elevated the front pivotal mounting sufficiently to obtain a suspension of the engine unit in perfect balance. He thus overcame any side thrust resulting from imperfect balance and no doubt produced an improved result. But he solved the vibration problem by the use of Trott's combination and Trott's conception. He simply made a change that enabled the Trott combination to produce its appropriate result in a more perfect way. He at most effected an improvement.

In my former dissent I agreed that patent '871 was not infringed. I am now convinced that both '871 and '907 are valid and infringed.

For the reasons stated, I respectfully dissent from the order denying the petition for rehearing.